UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

JOEL SAINT BON,

      Plaintiff,

v.


PAPA JOHN'S INTERNATIONAL, INC.,
PAPA JOHN'S USA, INC.,
PIZZERIAS, LLC, and
FERNANDO GUTIERREZ,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Joel Saint Bon, by and through his undersigned attorney, hereby files this Complaint against Defendants, Papa John's International, Inc., Papa John's USA, Inc., Pizzerias, LLC, and Fernando Gutierrez, and alleges:

## JURISDICTION, VENUE AND PARTIES

1.      Plaintiff, Joel Saint Bon (hereinafter "Saint Bon"), at all times material to this action, was, and is, a resident of Broward County, Florida, and is otherwise sui juris.

2.      Defendants, Papa John's International, Inc., a Delaware corporation, and through its subsidiary, Papa John's USA, Inc., a Kentucky corporation, (collectively "Papa John's") at all times material to this action, possessed, and continues to possess, their principal place of business in Kentucky. Papa John's operates under a franchise business model. Specifically, a number of Papa John's restaurants are not actually owned by Papa John's, the franchisor, but by independent franchisees in the United States and Canada. Papa John's possesses franchisees, and regularly conducts business, in Miami-Dade County, Florida. Papa John's is a joint employer with its

1

franchisees because Papa John's exercises indirect control over working conditions and/or reserves the authority to do so through its right to control operations at all of its restaurants via franchise agreements, business manuals and other operating documents. For example:

  a. Papa John's 2016 Form 10-K, which was filed on or about February 23, 2016, with the U.S. Securities and Exchange Commission, states: "Commitment to Team Member Training and Development. We are committed to the development and motivation of our team members through training programs, incentive and recognition programs and opportunities for advancement. Team member training programs are conducted for corporate restaurant team members, and operational training is offered to our franchisees. We offer performance-based financial incentives to corporate team members and restaurant managers."

  b. Papa John's 2016 Form 10-K also notes: "Strong Franchise System. We are committed to developing and maintaining a strong franchise system by attracting experienced operators, supporting them to expand and grow their business and monitoring their compliance with our high standards. We seek to attract franchisees with experience in restaurant or retail operations and with the financial resources and management capability to open single or multiple locations. We devote significant resources to provide Papa John's franchisees with assistance in restaurant operations, operations training, marketing, site selection and restaurant design."

  c. According to the 2015 Franchise Disclosure Document, Papa John's provides initial and additional training on the operation of restaurant to the principal operator and the restaurant managers. Papa John's also reserves the right to require any of a franchisee's employees or prospective employees to take part in training and instruction as it deems necessary.

  3. Defendant, Pizzerias, Inc., d/b/a Papa John's (hereinafter "Pizzerias"), at all times material to this action, was, and is, a Florida limited liability company. In documents filed with

the Florida Department of State, Division of Corporations, Pizzerias lists 8619 South Dixie Highway, Miami, Florida 33143 as its principal address. Pizzerias is a Papa John's franchisee and operates Papa John's #555, which is a Papa John's restaurant located at 20312 NW 2nd Avenue, Miami, Florida 33169 (hereinafter the "Restaurant").

4.      Defendant, Fernando Gutierrez (hereinafter "Gutierrez"), is a Papa John's and Pizzerias employee and a manager at the Restaurant. As a result of his job duties and responsibilities at the Restaurant, Gutierrez regularly conducts business in Miami-Dade County, Florida.

5.      This is an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e, et seq.); the Age Discrimination in Employment Act of 1967 (the "ADEA"); the Americans with Disabilities Act of 1990, including the Americans with Disabilities Amendments Act of 2008 (the "ADA"); the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 1981, et seq.) ("Section 1981"); Florida Civil Rights Act of 1992 (Florida Statutes §§ 760.01, et seq.) (the "FCRA"); and the common law of the State of Florida.

6.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343 to redress the unlawful deprivation of Saint Bon's rights secured, guaranteed and protected by federal law. The Court also may exercise pendant jurisdiction over Saint Bon's state law claims arising under the common law and statutes of the State of Florida, and which arise from a nucleus of operative facts, pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b), wherein Saint Bon resides; Papa John's, Pizzerias and

Guiterrez regularly conduct business; and where a substantial amount of the events that give rise to this claim took place.

**GENERAL ALLEGATIONS**

8.      Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); (c) national origin (Republic of Haiti); (d) age (56 years old); (e) disabilities (including, but not limited to, back injury); and (f) in retaliation for protected activity (including, but not limited to, filing government agency complaints and opposing unlawful practices).

9.      Saint Bon was an employee of Papa John's and Pizzerias from approximately 1993 to 2005 as a delivery driver. Saint Bon resumed employment from approximately February 2011 to the current date.

10.      During the week of July 17, 2013, Ronald Romero, then store manager of the Restaurant and a male Hispanic, allowed at least two employee-friends, who were male Hispanics, to leave work early without completing their work assignments, while Saint Bon was forced to complete his work assignments on at least two occasions. Romero's decisions were retaliatory actions in response to Saint Bon opposing unlawful practices by Romero against another employee, who is a member of protected group based on his race and color (Black/person of African descent) and national origin (Republic of Haiti).

11.      In approximately December 2013, Gutierrez, a male Hispanic, started working at the Restaurant as a store manager.

12.      Prior to Gutierrez's arrival, Saint Bon worked the following schedule: Monday (3:30 pm – 1:00 am); Tuesday (3:30 pm – 1:00 am); Wednesday (Day-off); Thursday (4:00 pm or

4:30 pm – 10:00 pm) Friday (2:30pm – 10pm); Saturday (2:30pm – 10pm); and Sunday (no work for religious issues).

13.     In approximately December 2013, and after Gutierrez's arrival at the Restaurant, Gutierrez reduced Saint Bon's hours in the following work schedule: Monday (5:00pm – 1am); Tuesday (5:00pm – 1am); Wednesday (Off); Thursday (5:00pm – 10pm) Friday (5:00pm – 10pm); Saturday (5:00pm – 10pm); and Sunday (no work for religious issues).

14.     Gutierrez assigned Saint Bon's hours to employees younger in age and experience than Saint Bon.

15.     During the week of March 25, 2014, Saint Bon wrote a letter to Gutierrez in which Saint Bon reported a retaliatory action against him by assistant manager Shavon. Previously, Shavon made Saint Bon and another employee, who is a member of protected group based on his race and color (Black/person of African descent) and national origin (Republic of Haiti), stay to wash all of the dishes and tables after she released other employees. Shavon's decisions were retaliatory actions in response to Saint Bon opposing unlawful practices by Guiterrez against Saint Bon.

16.     During the week of June 14, 2014, Saint Bon observed, and was impacted by, preferential treatment provided to Hispanic employees by Papa John's and Pizzerias' Hispanic management at the Restaurant. For example, although some Hispanic employees did not possess requisite knowledge, skills and experience to complete certain tasks (i.e., unable to transition from credit to cash transactions), Hispanic management at the Restaurant assigned such employees, and not Saint Bon (who possessed the requisite knowledge, skills and experience), to positions that required the requisite knowledge, skills and experience.

17.    During the week of June 22, 2014, Saint Bon wrote a letter to Many Overthon ("Overthon"), Pizzerias vice president, to discuss incidents of harassment from Gutierrez. Specifically, Louis, a Papa John's and Pizzerias employee, transferred to another store after the filing of a complaint by Saint Bon. After the Louis transfer, Gutierrez met Saint Bon at the Restaurant one morning. During the discussion, which included Gutierrez yelling and/or screaming at Saint Bon, Gutierrez informed Saint Bon: "Louis didn't transfer because of your complaint."

18.    On or about June 21, 2014, Gutierrez approached Saint Bon while Saint Bon was working at the pizza oven in the Restaurant and grabbed the paddle from Saint Bon, while instructing Saint Bon to leave the area. Gutierrez followed Saint Bon to where he was fixing boxes and began to scream at Saint Bon because Gutierrez felt that Saint Bon was making too much noise. Instead, Saint Bon was performing his assigned tasks according to the proper protocols.

19.    In June 2014, Saint Bon called Mario Linardi, a Papa John's and Pizzerias supervisor, to make a complaint about the treatment he received at the Restaurant. However, instead of receiving the complaint and conducting a thorough investigation, Linardi informed Saint Bon: "You are the problem. You are the problem with everybody."

20.    On or about September 18, 2014, Gutierrez instructed Saint Bon to clean a freezer with his bare hands and without the appropriate equipment (e.g., gloves), which was a violation of industry workplace standards.

21.    On or about September 19, 2014, Gutierrez instructed Saint Bon to clean the same freezer Saint Bon cleaned one-day prior because Gutierrez determined Saint Bon failed to sufficiently complete the September 18, 2014, assignment. Instead, Saint Bon completed the cleaning of the freezer despite not having been provided the proper equipment by Gutierrez.

22.     During the week of October 16, 2014, Gutierrez instructed Saint Bon to lift boxes containing pizza sauce containers, which weighed more than ten pounds, although Saint Bon previously provided Gutierrez with a doctor's note, which stated Saint Bon could not lift more than ten pounds due to a medical condition.

23.     On or about December 6, 2014, Saint Bon received a doctor's note, which stated Saint Bon could not lift more than ten pounds due to a medical condition (i.e., back problems). Saint Bon subsequently provided Gutierrez with the December 6, 2014, note. Nevertheless, Gutierrez instructed Saint Bon to lift: (a) boxes of pineapples, which weighed more than ten pounds; and (b) boxes of two-liter soda, which weighed more than ten pounds. On or about December 7, 2014, Saint Bon discovered his back was re-injured.

24.     Between approximately December 2014 and January 2015, Gutierrez instructed Saint Bon to wash dishes for a week straight on more than one occasion. Guiterrez assigned Saint Bon to wash dishes in retaliation to Saint Bon reporting Guiterrez's unlawful business practices to the Papa John's and Pizzerias' management.

25.     During the week of January 31, 2015, Gutierrez yelled at Saint Bon, which caused Saint Bon to experience dizziness (Saint Bon recognized, from prior experiences, the dizziness was a symptom of elevated blood pressure).

26.     On or about March 22, 2015, Gutierrez suspended Saint Bon for not washing dishes pursuant to Gutierrez's directions. However, Saint Bon was instructed to dispose of the trash by another manager instead of completing the dishwashing assignment.

27.     On or about March 22, 2015, Gutierrez sent Saint Bon home at an earlier time than what was posted on Saint Bon's schedule. Gutierrez assigned Saint Bon's hours to Gutierrez's mother, who is a Hispanic woman.

28.     On or about March 23, 2015, Saint Bon filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR"). The Charge of Discrimination summarized the various discriminatory practices in the Restaurant by Papa John's and Pizzerias management.

29.     On or about April 10, 2015, Gilbert Carrillo, ADR Coordinator for the Miami District Office of U.S. Equal Employment Opportunity Commission ("EEOC"), notified Saint Bon that his case against Papa John's was selected for mediation.

30.     During the week of July 27, 2015, Saint Bon requested a new uniform shirt from Gutierrez and Linardi, but Saint Bon did not receive new uniform shirts. However, other employees received new uniform shirts.

31.     On or about October 27, 2015, Gutierrez approached and yelled at Saint Bon. Gutierrez was displeased because another manager assigned Saint Bon a task, but Gutierrez was not satisfied with the task being assigned to Saint Bon. Saint Bon completed, or was in the process of completing, the assignment when Gutierrez confronted Saint Bon. Gutierrez told Saint Bon that Saint Bon would follow Gutierrez's instructions. Saint Bon felt his head spin. Saint Bon subsequently sat on the floor. Restaurant employees approached Saint Bon, who informed the employees he felt dizzy and was in shock. Gutierrez called 911. Thereafter, Gutierrez tried to touch Saint Bon, but Saint Bon said "Don't touch me". The paramedics arrived and examined Saint Bon. The paramedics concluded Saint Bon was hyperventilating. Saint Bon insisted that he be taken to the hospital because he felt like he was dying; however, the paramedics declined to transport Saint Bon to the hospital. Saint Bon informed management that he had a stress issue.

32.     On or about October 28, 2015, at approximately 3:00 am ET, Saint Bon arrived at Jackson North Medical Center with a complaint of shortness of breath. The medical facility's diagnosis was "acute mastoiditis without complications, left ear" and "dizziness and giddiness."

33.     On or about February 20, 2016, Saint Bon received a suspension from Gutierrez because another manager assigned Saint Bon a task, but Gutierrez was not satisfied with the task being assigned to Saint Bon, so Gutierrez gave Saint Bon a different task. Saint Bon did what Gutierrez instructed, but, on the following day, Gutierrez claimed that Saint Bon did not fulfill the task to Gutierrez's specifications. Saint Bon was suspended.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

34.     All conditions precedent to this filing have been satisfied.

35.     Specifically, on or about May 7, 2015, Saint Bon filed a Charge of Discrimination with the FCHR, which was jointly filed with the EEOC. The Charge of Discrimination is attached hereto as Exhibit A.

36.     On February 2, 2016, the EEOC issued a Notice of Right to Sue. The Notice of Right to Sue is attached hereto as Exhibit B.

37.     Saint Bon filed this Complaint with the Court within 90 days of his receipt of the Notice of Right to Sue.

## COUNT I
## SECTION 1981: RACIAL DISCRIMINATION

38.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-33, as if they were fully set forth herein.

39.      This is an action under Section 1981.

40.     At all times material hereto, Saint Bon was a citizen of, and person within, the jurisdiction of the United States, and, as a result, possessed the same rights, as defined under Section 1981, as all other citizens and persons within the jurisdiction of the United States.

41.     The racial discrimination, harassment and retaliation against Saint Bon began in approximately July 2013 and continues to present: (a) when managers and agents of Papa John's

and Pizzerias (including, but not limited to, Romero and Gutierrez) partook in discriminatory scheduling practices against Saint Bon; (b) when Saint Bon became subject to Papa John's and Pizzerias discriminatory scheduling practices and/or other illicit discriminatory practices; (c) and/or when Saint Bon was affected by Papa John's and Pizzerias application of preferential treatment, discriminatory scheduling practices, and/or other illicit discriminatory practices. The racial discrimination against Saint Bon by Papa John's and Pizzerias are illustrative of the pervasive policy and/or pattern or practice of discrimination, harassment and retaliation in employment that existed for Saint Bon and other Black employees at Papa John's and Pizzerias.

42.     Specifically, during Saint Bon's time of employment with Papa John's and Pizzerias, the following acts of discrimination, harassment and retaliation, based on race, were committed by Papa John's and Pizzerias against Saint Bon: (a) denying Saint Bon a new uniform shirt, but providing shirts to other employees; (b) managers allowing employee-friends to leave work without completing mandated tasks, but forcing Saint Bon to stay and work; (c) management declining to abide by the restrictions placed in Saint Bon's doctor's notes; (d) management inflicting emotional distress onto Saint Bon by yelling and/or screaming at him (which caused Saint Bon to suffer a diagnosed medical condition); (e) management requiring Saint Bon to redo work that Saint Bon sufficiently completed; and (f) management taking away a portion of Saint Bon's schedule and providing the hours to other employees.

43.     As a result of this disparate treatment and/or discrimination due to Saint Bon's race, Saint Bon suffered emotional distress, lost wages, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias, for monetary damages; compensatory damages; future pecuniary losses; non-pecuniary

losses; punitive damages; injunctive relief, as well as any and all other relief permitted and deemed appropriate by this Court.

## COUNT II
## TITLE VII: DISPARATE TREATMENT

44.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

45.     This is an action under Title VII.

46.     At all times material hereto, Saint Bon was an "employee" within the meaning of Title VII. Under Title VII, the term "employee means an individual employed by an employer".

47.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

48.     At all times material hereto, Papa John's and Pizzerias were "employers" within the meaning of Title VII. Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person".

49.     Under Title VII, it is considered an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms of employment or privileges of employment because of such individual's race, color and national origin or to limit, segregate or classify his employees or applications for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's race, color and national origin.

50.     Papa John's and Pizzerias discriminated against Saint Bon under the disparate treatment theory: where the employer treats some people less favorably than others because of their race, color, religion, sex, or national origin.

51.     Papa John's and Pizzerias' employment practices discriminated against Saint Bon under a disparate treatment theory in one way. Specifically, Saint Bon is a member of three protected classes (i.e., race, color and national origin). Saint Bon was subjected to disparate treatment. Papa John's and Pizzerias treated similarly situated employees outside Saint Bon's protected classes more favorably than Saint Bon.

52.     An employment practice in violation of Title VII occurred beginning in approximately July 2013: (a) when managers partook in discriminatory scheduling practices against Saint Bon; (b) when Saint Bon became subject to Papa John's and Pizzerias' discriminatory scheduling practices and/or other illicit discriminatory practices; and/or (c) when Saint Bon was affected by Papa John's and Pizzerias' application of preferential treatment, discriminatory scheduling practices, and/or other illicit discriminatory practices. The discrimination against Saint Bon by Papa John's and Pizzerias are illustrative of the pervasive policy and/or pattern or practice of discrimination in employment that existed for Saint Bon, as well as Haitian and Black employees at Papa John's and Pizzerias.

53.     For example, during Saint Bon's time of employment with Papa John's and Pizzerias, the following discriminatory acts were committed by Papa John's and Pizzerias against Saint Bon: (a) denying Saint Bon a new uniform shirt, but providing shirts to other employees; (b) managers allowing employee-friends to leave work without completing mandated tasks, but forcing Saint Bon to stay and work; (c) management declining to abide by the restrictions placed in Saint Bon's doctor's notes; (d) management inflicting emotional distress onto Saint Bon by

yelling and/or screaming at him (which caused Saint Bon to suffer a diagnosed medical condition); (e) management requiring Saint Bon to redo work that Saint Bon sufficiently completed; and (f) management taking away a portion of Saint Bon's schedule so that younger workers could take the hours.

54.     As a result of this disparate treatment due to Saint Bon's race, color and national origin, Saint Bon has suffered emotional distress, lost wages, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under federal law.

## COUNT III
## TITLE VII: DISPARATE IMPACT

55.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

56.     This is an action under Title VII.

57.     At all times material hereto, Saint Bon was an "employee" within the meaning of Title VII. Under Title VII, the term "employee means an individual employed by an employer".

58.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

59.     At all times material hereto, Papa John's and Pizzerias is, and was, an "employer" within the meaning of Title VII. Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in

each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."

60.     An unlawful employment practice based on disparate impact occurred because Papa John's and Pizzerias used an employment device, policy or practice that results in a disparate impact upon Haitian and Black employees, including Saint Bon, because: (a) a disparity existed; (b) the disparity was caused by a specific employment device, policy or practice; (c) the challenged policy was not justified by business necessity; and (d) alternative and less discriminatory measures were available to Papa John's and Pizzerias that would have served its needs as well. Specifically:

a.      Disparity caused by a specific employment device, policy, or practice. A disparity occurred beginning in approximately July 2013: (a) when managers partook in discriminatory scheduling practices against Saint Bon; (b) when Saint Bon became subject to Papa John's and Pizzerias' discriminatory scheduling practices and/or other illicit discriminatory practices; and/or (c) when Saint Bon was affected by Papa John's and Pizzerias' application of preferential treatment, discriminatory scheduling practices, and/or other illicit discriminatory practices. The discrimination against Saint Bon by Papa John's and Pizzerias are illustrative of the pervasive policy and/or pattern or practice of discrimination in employment that existed for Saint Bon and Haitian and Black employees at Papa John's and Pizzerias.

b.      Lack of business necessity. A reasonable relationship did not exist between Papa John's and Pizzerias' employment practice and its business needs. Further, Papa John's and Pizzerias' employment practices were not essential to the safety and efficiency of its operations.

c.      Availability of alternative and less discriminatory measures. Other employment devices, policies or practices without a similar discriminatory effect existed that would have served Papa John's and Pizzerias' legitimate interest in efficient workmanship.

14

61.     For example, during Saint Bon's time of employment with Papa John's and Pizzerias, the following discriminatory acts were committed by Papa John's and Pizzerias against Saint Bon: (a) denying Saint Bon a new uniform shirt, but providing shirts to other employees; (b) managers allowing employee-friends to leave work without completing mandated tasks, but forcing Saint Bon to stay and work; (c) management declining to abide by the restrictions placed in Saint Bon's doctor's notes; (d) management inflicting emotional distress onto Saint Bon by yelling and/or screaming at him (which caused Saint Bon to suffer a diagnosed medical condition); (e) management requiring Saint Bon to redo work that Saint Bon sufficiently completed; and (f) management taking away a portion of Saint Bon's schedule so that younger workers could take the hours.

62.     As a result of this discrimination under a disparate impact theory due to Saint Bon's race, color and national origin, Saint Bon has suffered emotional distress, lost wages and benefits, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under federal law.

## COUNT IV
## TITLE VII: RETALIATION

63.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

64.     This is an action under Title VII.

65.     At all times material hereto, Saint Bon was an "employee" within the meaning of Title VII. Under Title VII, the term "employee means an individual employed by an employer.

66.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

67.     At all times material hereto, Papa John's and Pizzerias is, and was, an "employer" within the meaning of Title VII. Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person".

68.     Title VII forbids employers, such as Papa John's and Pizzerias from retaliating against an employee because of the employee's opposition to any practice made an unlawful practice by Title VII. Specifically, Title VII prohibits penalizing an employee who engages in protected activity under the "participation clause", which protects employees who testify or assist others who have complained about discrimination. This guideline reinforces the EEOC's policy of ensuring protection for employees who assist in employment discrimination proceedings.

69.     As an employee of Papa John's and Pizzerias, Saint Bon was protected against retaliatory employment action for engaging in a statutorily-protected activity under Title VII. Specifically, Saint Bon was protected against retaliatory adverse employment action for his written complaints to Linardi, Overthon, and the EEOC against Papa John's and Pizzerias and the companies' agents.

70.     In response to Saint Bon's written complaints to Linardi, Overthon, and the EEOC against Papa John's and Pizzerias and the companies' agents, Saint Bon's status as an employee has been affected in the following ways: (a): Saint Bon was denied a uniform shirt, after he

16

requested it; (b) Saint Bon was made to redo work that he adequately completed; (c) Saint Bon was made to wash dishes and other tasks in retaliation after Saint Bon complained on behalf of himself and other employees; and (d) management reduced Saint Bon's work schedule.

71.     As a proximate result of Papa John's and Pizzerias retaliation, Saint Bon has suffered emotional distress, lost wages and benefits, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under federal law.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT: DISPARATE TREATMENT

72.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

73.     This is an action under the FCRA.

74.     At all times material, Papa John's and Pizzerias was an "employer" as defined by Florida Statutes § 760.02(7). Under the FCRA, an "employer" means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

75.     At all times material, Saint Bon was, and is, an "aggrieved person" as defined by Florida Statutes § 760.02(10). Under the FCRA, an "aggrieved person" is any person who files a complaint with the FCHR.

76.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

77.     Under Florida Statutes § 760.10, it is considered an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms of employment or privileges of employment because of such individual's race, color and national origin or to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's race, color and national origin.

78.     Papa John's and Pizzerias discriminated against Saint Bon under the disparate treatment theory: where the employer treats some people less favorably than others because of their race, color, religion, sex, or national origin.

79.     Papa John's and Pizzerias' employment practices discriminated against Saint Bon under a disparate treatment theory in one way. Specifically, Saint Bon is a member of three protected classes (i.e., race, color and national origin); Saint Bon was subjected to disparate treatment; Papa John's and Pizzerias treated similarly situated employees outside Saint Bon's protected classes more favorably than Saint Bon.

80.     An employment practice in violation of Title VII occurred beginning in approximately July 2013: (a) when managers partook in discriminatory scheduling practices against Saint Bon; (b) when Saint Bon became subject to Papa John's and Pizzerias' discriminatory scheduling practices and/or other illicit discriminatory practices; and/or (c) when Saint Bon was affected by Papa John's and Pizzerias' application of preferential treatment, discriminatory scheduling practices, and/or other illicit discriminatory practices. The discrimination against Saint Bon by Papa John's and Pizzerias are illustrative of the pervasive policy and/or pattern or practice of discrimination in employment that existed for Saint Bon, as well as Haitian and Black

employees at Papa John's and Pizzerias.

81.     For example, during Saint Bon's time of employment with Papa John's and Pizzerias, following discriminatory acts were committed by Papa John's and Pizzerias against Saint Bon: (a) denying Saint Bon a new uniform shirt, but providing shirts to other employees; (b) managers allowing employee-friends to leave work without completing mandated tasks, but forcing Saint Bon to stay and work; (c) management declining to abide by the restrictions placed in Saint Bon's doctor's notes; (d) management inflicting emotional distress onto Saint Bon by yelling and/or screaming at him (which caused Saint Bon to suffer a diagnosed medical condition); (e) management requiring Saint Bon to redo work that Saint Bon sufficiently completed; and (f) management taking away a portion of Saint Bon's schedule so that younger workers could take the hours.

82.     As a result of this disparate treatment due to Saint Bon's race, color and national origin, Saint Bon has suffered emotional distress, lost wages, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under state law.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT: DISPARATE IMPACT

83.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

84.     This is an action under the FCRA.

85.     At all times material, Papa John's and Pizzerias was an "employer" as defined by Florida Statutes § 760.02(7). Under the FCRA, an "employer" means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

86.     At all times material, Saint Bon was, and is, an "aggrieved person" as defined by Florida Statutes § 760.02(10). Under the FCRA, an "aggrieved person" is any person who files a complaint with the FCHR.

87.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

88.     Under Florida Statutes § 760.10, it is considered an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms of employment or privileges of employment because of such individual's race, color and national origin or to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's race, color and national origin.

89.     An unlawful employment practice based on disparate impact occurred because Papa John's and Pizzerias used an employment device, policy or practice that results in a disparate impact upon Haitian and Black employees, including Saint Bon, because: (a) a disparity existed; (b) the disparity was caused by a specific employment device, policy or practice; (c) the challenged policy was not justified by business necessity; and (d) alternative and less discriminatory measures were available to Papa John's and Pizzerias that would have served its needs as well. Specifically:

        a.      Disparity caused by a specific employment device, policy, or practice. A

disparity occurred beginning in approximately January or February July 2013: (a) when managers partook in discriminatory scheduling practices against Saint Bon; (b) when Saint Bon became subject to Papa John's and Pizzerias' discriminatory scheduling practices and/or other illicit discriminatory practices; and/or (c) when Saint Bon was affected by Papa John's and Pizzerias' application of preferential treatment, discriminatory scheduling practices, and/or other illicit discriminatory practices. The discrimination against Saint Bon by Papa John's and Pizzerias are illustrative of the pervasive policy and/or pattern or practice of discrimination in employment that existed for Saint Bon and Haitian and Black employees at Papa John's and Pizzerias.

    b.    Lack of business necessity. A reasonable relationship did not exist between Papa John's and Pizzerias' employment practice and its business needs. Further, Papa John's and Pizzerias' employment practices were not essential to the safety and efficiency of its operations.

    c.    Availability of alternative and less discriminatory measures. Other employment devices, policies or practices without a similar discriminatory effect existed that would have served Papa John's and Pizzerias' legitimate interest in efficient workmanship.

    90.    For example, during Saint Bon's time of employment with Papa John's and Pizzerias, the following discriminatory acts were committed by Papa John's and Pizzerias against Saint Bon: (a) denying Saint Bon a new uniform shirt, but providing shirts to other employees; (b) managers allowing employee-friends to leave work without completing mandated tasks, but forcing Saint Bon to stay and work; (c) management declining to abide by the restrictions placed in Saint Bon's doctor's notes; (d) management inflicting emotional distress onto Saint Bon by yelling and/or screaming at him (which caused Saint Bon to suffer a diagnosed medical condition); (e) management requiring Saint Bon to redo work that Saint Bon sufficiently completed; and (f)

management taking away a portion of Saint Bon's schedule so that younger workers could take the hours.

91.     As a result of this discrimination under a disparate impact theory due to Saint Bon's race, color and national origin, Saint Bon has suffered emotional distress, lost wages and benefits, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under state law.

## COUNT VII
## FLORIDA CIVIL RIGHTS ACT: RETALIATION

92.     Saint Bon re-alleges each and every allegation contained in paragraphs 1-37, as if they were fully set forth herein.

93.     This is an action under the FCRA.

94.     At all times material, Papa John's and Pizzerias was an "employer" as defined by Florida Statutes § 760.02(7). Under the FCRA, an "employer" means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

95.     At all times material, Saint Bon was, and is, an "aggrieved person" as defined by Florida Statutes § 760.02(10). Under the FCRA, an "aggrieved person" is any person who files a complaint with the FCHR.

96.     Saint Bon is a member of protected groups based on his: (a) race (Black/person of African descent); (b) color (Black); and (c) national origin (Republic of Haiti).

97.     Under Florida Statutes § 760.10, it is considered an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms of employment or privileges of employment because of such individual's race, color and national origin or to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's race, color and national origin.

98.     The FCRA forbids employers, such as Papa John's and Pizzerias; from retaliating against an employee because of the employee's opposition to any practice made an unlawful practice by the FCRA. Specifically, the FCRA prohibits penalizing an employee who engages in protected activity under the "participation clause", which protects employees who testify or assist others who have complained about discrimination. This guideline reinforces the FCHR's policy of ensuring protection for employees who assist in employment discrimination proceedings.

99.     As an employee of Papa John's and Pizzerias, Saint Bon was protected against retaliatory employment action for engaging in statutorily protected activity under FCRA. Specifically, Saint Bon was protected against retaliatory adverse employment action for his written complaints to: Linardi, Overthon, and EEOC against Papa John's and Pizzerias and their agents.

100.    In response to Saint Bon's written complaints to: Linardi, Overthon, and EEOC against Papa John's and Pizzerias and their agents, Saint Bon's status as an employee has been affected in the following ways: (a): SAINT BON was denied a uniform shirt, after he requested it; (b) Saint Bon was made to redo work that he adequately completed; (c) Saint Bon was made to wash dishes in retaliation after Saint Bon complained on behalf of himself and other employees.

101.    As a proximate result of Papa John's and Pizzerias' retaliation, Saint Bon has suffered emotional distress, lost wages and benefits, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages; punitive damages; attorney's fees and costs; back pay; and equitable relief; as well as any and all other relief permitted and deemed appropriate by this Court or under state law.

**COUNT VIII**
**NEGLIGENT SUPERVISION**

102.    Saint Bon re-alleges each and every allegation contained in paragraphs 1-33, as if they were fully set forth herein.

103.    Papa John's and Pizzerias had a duty to effectively and reasonably supervise its employees, in part, to avoid and/or mitigate a threat and/or harm to others, including Saint Bon. Further, Papa John's and Pizzerias had a duty to effectively and reasonably supervise its employees which includes: (a) properly and adequately training its managerial employees, including Romero, Gutierrez, Shavon and Linardi to adhere accurately to Papa John's and Pizzerias standards and practices; (b) carefully and diligently supervise its managerial employees, including Romero, Gutierrez, Shavon and Linardi, to ensure they were following Papa John's and Pizzerias standards and practices; (c) conducting a reasonable, proper and appropriate investigation once Papa John's and Pizzerias knew Romero, Gutierrez, Shavon and Linardi was failing to follow Papa John's and Pizzerias standards and practices; and (d) taking appropriate remedial action once Papa John's and

Pizzerias knew or should have known of Romero, Gutierrez, Shavon and Linardi's failure to follow Papa John's and Pizzerias standards and practices.

104.    During the course of Romero, Gutierrez, Shavon and Linardi's employment, Papa John's and Pizzerias became aware and/or should have become aware of problems with Romero, Gutierrez, Shavon and Linardi that indicated his/her unfitness as employees of their corporations. Further, during the course of Romero, Gutierrez, Shavon and Linardi's employment, Papa John's and Pizzerias became aware and/or should have become aware of problems with Romero, Gutierrez, Shavon and Linardi that indicated his/her failure to properly follow Papa John's and Pizzerias standards and practices would make him/her a threat to and/or harm other employees, including Saint Bon. Papa John's and Pizzerias also knew and/or should have known that Saint Bon was within the zone of foreseeable risk created by employment.

105.    During the course of Romero, Gutierrez, Shavon and Linardi's employment, Papa John's and Pizzerias knew and/or should have known that it was necessary to control Romero, Gutierrez, Shavon and Linardi in order to prevent him/her from intentionally harming others, including Saint Bon. Further, Papa John's and Pizzerias had the ability to control Romero, Gutierrez, Shavon and Linardi. Furthermore, Papa John's and Pizzerias knew of the necessity and opportunity for exercising control over Romero, Gutierrez, Shavon and Linardi via Saint Bon's repeated reports to his superiors at Papa John's and Pizzerias.

106.    Despite such actual and/or constructive knowledge, Papa John's and Pizzerias failed to diligently and adequately supervise Romero, Gutierrez, Shavon and Linardi and, thereby, allowed Romero, Gutierrez, Shavon and Linardi to subject Saint Bon to an adverse employment action which ultimately led to Saint Bon being the subject of discrimination, harassment and retaliation. Further, despite such actual and/or constructive knowledge, Papa John's and Pizzerias

failed to take reasonable steps to safeguard Saint Bon by failing to take appropriate and timely corrective action, up to and including termination against Romero, Gutierrez, Shavon and Linardi. As such, Papa John's and Pizzerias breached its duty of care to Saint Bon.

107.    Papa John's and Pizzerias' negligent supervision of Romero, Gutierrez, Shavon and Linardi directly and proximately resulted in discrimination, harassment and retaliation against Saint Bon.

108.    As a proximate result of Papa John's and Pizzerias' negligence and breach of duty, Saint Bon has suffered emotional distress, lost wages, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages, as well as any and all other relief permitted and deemed appropriate by this Court or under federal or state law.

**COUNT IX**
**BREACH OF CONTRACT**

109.    Saint Bon re-alleges each and every allegation contained in paragraphs 1-33, as if they were fully set forth herein.

110.    Papa John's and Pizzerias promulgated written statements of employment policies, practices and procedures, which it provided and disseminated to all of its employees, including Saint Bon. This was done through the Papa John's Pizza Team Member Handbook ("Handbook").

111.    Papa John's and Pizzerias represented, both orally and in writing, that it would treat employees in a fair and equitable manner, as well as to investigate claims of discrimination. Specifically, Papa John's and Pizzerias promulgated a policy in the Handbook, which is provided to all employees, including Saint Bon, that management use verbal and written notices to communicate and identify work rule violations and/or desired improvements in performance or

behavior. Further, Papa John's and Pizzerias identified that the purpose of the notices is to provide employees notice of the problem. Employees, such as Saint Bon, are then expected to comply in a timely manner with the corrective measure contained in the notice or discharge may follow. Further, Papa John's and Pizzerias outlined a process for employees, including Saint Bon, to file discrimination complaints, which are supposed to be thoroughly investigated by Papa John's and Pizzerias.

112.    The customary and current practice of Papa John's and Pizzerias was to follow the Equal Opportunity Policy and the Termination Policy/Procedure. Further, Papa John's and Pizzerias promulgated their: (a) warning notice system as part of their policies and procedures in such a manner as to manifest its willingness to communicate with its employees about misconduct, including Saint Bon; and (b) discrimination investigation protocol to ensure employees of fair treatment under company policy and federal and state law.

113.    Saint Bon assented to Papa John's and Pizzerias offer regarding the Equal Opportunity Policy and the Termination Policy/Procedure by accepting employment and continuing employment. Further, Saint Bon's initial and/or continued employment with Papa John's and Pizzerias constituted acceptance of and consideration for Papa John's and Pizzerias offer.

114.    Papa John's and Pizzerias breached its contract with Saint Bon by its failure to follow its own practices, policies and procedures with regard to the terms and conditions of Saint Bon's employment as set forth herein.

115.    Moreover, Papa John's and Pizzerias expected and/or should have reasonably expected Saint Bon to rely on the aforementioned policies and procedures as a commitment by Papa John's and Pizzerias to follow and abide by them, including the discrimination investigation

procedure and the warning notice system.

116.    Papa John's and Pizzerias conduct was willful and wanton in failing to adhere to its own practices, policies and procedures.

117.    Papa John's and Pizzerias failure to perform the obligations of its contract was the proximate cause of damages to Saint Bon.

118.    As a proximate result of Papa John's and Pizzerias breach of its contract, Saint Bon has suffered emotional distress, lost wages, mental anguish, inconvenience, humiliation and embarrassment, all of which exist to this day and are likely to continue into the future.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for compensatory damages, as well as any and all other relief permitted and deemed appropriate by this Court or under federal or state law.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

119.    Saint Bon re-alleges each and every allegation contained in paragraphs 1-33, as if they were fully set forth herein.

120.    As set forth herein, during his employment with Papa John's and Pizzerias, Saint Bon was subjected to a pattern of discrimination and misconduct in the workplace based in whole, or in part, on his race, national origin, disability and age.

121.    Gutierrez displayed extreme and outrageous conduct (including, but not limited to: abusive communications; and assignment of physical tasks inconsistent with known medical directions), which was intended to cause, or had a substantial probability of causing, severe emotional distress in Saint Bon on several occasions. Gutierrez's conduct resulted in Saint Bon's physical injuries and emotional distress, including, but not limited to, on October 27-28, 2015, when Saint Bon had to be treated by medical personnel after being subject to Gutierrez's conduct.

122.    Further, Papa John's and Pizzerias knew or should have known that Saint Bon was being treated disparately by Gutierrez and others in comparison to other employees. Despite said knowledge, Papa John's and Pizzerias ignored this knowledge and offered Saint Bon no acknowledgement so there would be better treatment within Papa John's and Pizzerias.

123.    By acting with intentional, reckless or deliberate indifference to Saint Bon's requests, Papa John's, Pizzerias and Gutierrez knew there was a substantial probability that severe emotional distress would result to Saint Bon.

124.    Papa John's, Pizzerias and Gutierrez actions towards Saint Bon, as set forth above, are evidence of a pattern of race, national origin, disability and age discrimination, which further constitutes extreme and outrageous conduct.

125.    The conduct of Papa John's, Pizzerias and Gutierrez was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

126.    The extreme and outrageous conduct of Papa John's, Pizzerias and Gutierrez was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Saint Bon.

127.    As a direct and proximate result of Papa John's, Pizzerias and Gutierrez extreme and outrageous conduct, Saint Bon suffered severe emotional distress.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's, Pizzerias and Gutierrez for compensatory; and punitive damages; as well as any and all other relief permitted and deemed appropriate by this Court or under federal or state law.

## COUNT XI
## ADEA: DISCRIMINATION BASED ON AGE

128.    Saint Bon re-alleges each and every allegation contained in paragraph 1-33, as if it was fully set forth herein.

129.    This is an action under the ADEA.

130.    Saint Bon is a person within the ADEA's protected age group.

131.    Saint Bon was adversely affected by Papa John's and Pizzerias' employment decisions, including, but not limited to, Gutierrez's and other managers' decisions to: (a) re-assign Saint Bon with other duties on several occasions; and (b) reduce Saint Bon's work schedule.

132.    Saint Bon, who has worked for Papa John's and Pizzerias on two occasions starting in 1993, was, and is, qualified for the positions and duties at issue.

133.    As a result of Gutierrez's and other managers' decisions, Saint Bon was replaced by persons outside of the protected group.

134.    Papa John's and Pizzerias' conduct constituted discrimination based on age in violation of the ADEA. The stated reasons for Papa John's and Pizzerias' conduct were not the true reasons, but instead were pretext to hide Papa John's and Pizzerias' discriminatory animus.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for back pay; front pay; liquidated damages; reinstatement or promotion; injunctive relief; pre-judgment interest discretionary; and attorney's fees and costs; as well as any and all other relief permitted and deemed appropriate by this Court or under federal law.

## COUNT XII
## ADA: FAILURE TO REASONABLY ACCOMMODATE

135.    Saint Bon re-alleges each and every allegation contained in paragraphs 1-33, as if they were fully set forth herein.

136.    This is an action under the ADA.

137.    Saint Bon possessed a back injury and other physical impairments. As documented in the October and December 2014 doctor's notes (which instructed Saint Bon's work duties be restricted or limited), Saint Bon's medical condition was a disability since it was a physical impairment that substantially limited one or more of Saint Bon's major life activities, including performing manual tasks and working.

138.    Papa John's and Pizzerias' conduct constituted a failure to reasonably accommodate Saint Bon when Saint Bon produced doctor's notes to management in approximately October and December 2014.

139.    On each occasion, Papa John's and Pizzerias failed to provide Saint Bon with a reasonable accommodation.

140.    As a proximate result of Papa John's and Pizzerias failure to accommodate Saint Bon's disability, which was corroborated with doctor's notes, Saint Bon experienced severe pain and suffering.

WHEREFORE, Saint Bon demands a trial by jury, a judgment against Papa John's and Pizzerias for back pay; front pay; reinstatement or promotion; compensatory damages; punitive damages; injunctive relief; and attorney's fees and costs; as well as any and all other relief permitted and deemed appropriate by this Court or under federal law.

## <u>DEMAND FOR JURY TRIAL</u>

141.    Saint Bon, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury in this action on all issues so triable.

Dated: May 2, 2016.

Respectfully submitted,

/s/ Michael L. Buckner
_____
Michael L. Buckner, Esquire
Florida Bar No. 106331
Email: mbuckner@bucknersportslaw.com
Michael L. Buckner Law Firm, P.A.
7771 West Oakland Park Blvd., Suite 162
Sunrise, Florida 33351 USA
Telephone: +1-954-941-1844
Facsimile: +1-954-941-1846

Attorneys for the Plaintiff,
Joel Saint Bon